**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

CHARLES STEWART, #111347                    CIVIL ACTION

VERSUS                                       NO. 06-1807

RICHARD STALDER                              SECTION C


**<u>ORDER & REASONS</u>**

Now before the court is the petition for writ of *habeas corpus* filed pursuant to
28 U.S.C. 2254 by Charles Stewart (hereafter "Petitioner").  Petitioner is an inmate in the
custody of Louisiana's Department of Public Safety and Corrections.  He is currently
incarcerated at the Elayn Hunt Correctional Center.  Petitioner filed this application for
federal habeas corpus relief on March 27, 2006 seeking relief from a May 2001
conviction for distribution of cocaine in violation of LSA-R.S. 40:967(A), for which,
after a multiple bill hearing, he was sentenced to 47 years with the Department of
Corrections, under the Louisiana Multiple Offender Law, LSA-R.S. 15:529.1. As
grounds for relief, Petitioner asserts four claims: (1) the trial court wrongfully granted
the prosecution's *Batson* challenges to two jurors who later ended up on the jury;
(2) the trial court wrongfully denied defense counsel's motion for a competency hearing,
resulting in the petitioner being tried while incompetent in violation of his due process
rights; (3) the sentence imposed was excessive; and (4) Petitioner was denied effective
assistance of counsel.

For the reasons set forth as follows, this petition is DENIED.

# I. PROCEDURAL HISTORY

Petitioner was indicted by a St. John the Baptist Parish grand jury on October 26, 1999 for distribution of cocaine in violation of LSA-R.S. 40:967(A).  He was arraigned on November 29, 1999, at which time he pled not guilty.  On May 1, 2001 a 12-person jury heard Petitioner's case and found Petitioner guilty.  The State filed a multiple bill on August 21, 2001, alleging Petitioner to be a second felony offender, which Petitioner denied on August 22, 2001.  The trial court found Petitioner to be a second felony offender on September 19, 2001 and sentenced him to 47 years with the Department of Corrections.  Petitioner appealed arguing that the trial court erred in granting the prosecution's *Batson* challenges to two jurors who subsequently ended up on the jury; that the trial court erred in denying defense counsel's motion for a competency hearing; and that the sentence imposed violated Louisiana's sentencing guidelines and was excessive in violation of Article I of the Louisiana Constitution and the Eighth Amendment of the Constitution of the United States of America.

Petitioner's direct appeal was denied on January 27, 2004 by the Louisiana Fifth Circuit Court of Appeal with writs to the Louisiana Supreme Court denied on June 25, 2004.  In its decision on direct appeal, the Louisiana Fifth Circuit Court of Appeal found that the trial court was acting within its discretion in reaching its conclusions regarding the *Batson* challenges; that neither the filing of a motion to determine competency nor Petitioner's brief verbal exchange with the judge required the judge to grant a competency hearing where the judge was satisfied that the defendant was competent; and that Petitioner's sentence was not constitutionally excessive because it was within the statutory time limits for the crime committed and because it was given in light of several

factors properly taken into consideration during sentencing.  One judge dissented in part, indicating that because defendants convicted of similar crimes typically receive less time, Petitioner should have received a shorter sentence.  On August 16, 2004 Petitioner filed an application for post conviction relief, alleging ineffective assistance of trial counsel. Petitioner's application for post conviction relief was denied by the state court on August 23, 2004, by the Louisiana Fifth Circuit Court of Appeal on September 21, 2004, (04-KH-1069) and by the Louisiana Supreme Court on August 19, 2005.  There does not appear to be a written decision denying Petitioner's application for post-conviction relief.

## II. FACTS

The Louisiana Fifth Circuit Court of Appeal summarized the facts as follows:

> Agent Gilbeau of the Terrebonne Parish Sheriff's Office testified that, on September 30, 1999, she and a confidential informant (CI) traveled on Railroad Avenue in Reserve. Agent Gilbeau, who was driving the vehicle, observed a black male, later identified as the defendant, standing on Northwest First Street.  The defendant flagged her down, so Agent Gilbeau backed up the vehicle.  The defendant approached the driver's side window and asked what she wanted. Agent Gilbeau asked the defendant for a "40," which she explained is $40.00 of crack cocaine.
>
> The defendant subsequently dropped three pieces of crack cocaine into her left hand, and Agent Gilbeau reached for her money.  The CI asked the defendant if there was a number where they could reach him later, and the defendant said he would get the number.  He walked away from the vehicle and into a residence. While they were waiting, Agent Gilbeau moved her vehicle to the shoulder of the road in front of the residence.  The defendant came out shortly afterward, approached the passenger side of the vehicle, and handed Agent Gilbeau a matchbook with a number and the name "Charles" on it.  Agent Gilbeau testified that he wanted her to call him later to purchase more crack cocaine.
>
> After the defendant gave her the matchbook, Agent Gilbeau handed him the money.  The defendant walked away with a cell phone in his left hand and the money in his right hand.  Agent Gilbeau turned around in a church parking lot and drove off.  She placed the cocaine in a small plastic bag, sealed it, and gave it to Detective Hidalgo.  Agent Gilbeau positively identified the defendant in court, and testified that she had never met the defendant prior to the transaction.
>
> Detective Troy Hidalgo of the St. John the Baptist Parish Sheriff's Office testified that he was in charge of an operation which utilized undercover agents to

buy narcotics from street level dealers within documented high crime areas of St. John Parish.  He testified that, on September 30, 1999, he sent Agent Michelle Gilbeau to buy narcotics in an unmarked vehicle equipped with video and audio recording devices.  Detective Hidalgo monitored the transaction involving the defendant by audio two blocks away.  After the transaction took place, he met with Agent Gilbeau and obtained the narcotics from her.

Detective Hidalgo viewed the videotape of the transaction and positively identified the defendant, with whom he was familiar.  The tape, which was played for the jury, shows a vehicle proceeding down a road.  A black male, who is standing on the side of the road, approached the driver's side window with a cell phone in his left hand.  The black male subsequently dropped something from his right hand into the driver's left hand and then walked away from the vehicle. The driver then pulled to the side of the road, and the black male approached the passenger side window.  When he stepped away from the vehicle, it appears that he had something in his right hand and a cell phone in his left hand. The driver then pulled away.  Although conversation can be heard throughout the taped, the volume is too low to ascertain what was being said.

John Palm, Jr., a criminalist with the New Orleans Police Department who was qualified as an expert in the field of drug analysis, testified that he performed an analysis of the substance in this case and found it to be positive for cocaine. He did not weigh the substance, but he estimated its weight to be between one tenth and three tenths of a gram.

The defense did not call any witnesses.

### III. LAW & ANALYSIS

**A.    CUSTODY REQUIREMENT**

A petitioner must be "in custody," defined as a "physical incarceration or significant restrain on liberty," under conviction he or she is attacking.  *Justices of Boston Mun. Court v. Lyndon*, 466 U.S. 294, 300-01 (1984); see 28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. § 2254(a).  As Petitioner is incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana, for distribution of cocaine, he is in custody under the conviction he is attacking.  Therefore, the custody requirement that forms part of the Court's subject matter jurisdiction is satisfied.

**B.      TIMELINESS**

The state submits that the petition is timely, and after reviewing the record this Court agrees.  Generally, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a petitioner bring his Section 2254 claims within one year of the date on which his conviction became final.[1]  Pursuant to 28 U.S.C. 22244(d)(1)(A), a petitioner's one-year limitation period for seeking federal habeas corpus relief commences running on the date the judgment "became final by the conclusion of direct review or the expiration of the time for seeking such review." As Petitioner did not appeal to the United States Supreme Court, his conviction became "final" 90 days after the Supreme Court of Louisiana denied his application for supervisory writs. Petitioner's direct appeal was denied by the Supreme Court of Louisiana on June 25, 2004 and he did not appeal to the United States Supreme Court.  His conviction was, therefore, "final" on September 23, 2004, at which point the statute of limitations would normally begin to run.

---

[1]28 U.S.C. § 2254(d) provides:
>    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>        (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>        (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

AEDPA's one-year statute of limitations is, however, tolled for the period during which a properly filed application for post conviction relief or other collateral review attacking a conviction or sentence is pending in state court. See *Fields v. Jo*hnson, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. 2244(d)(2).  Petitioner filed an application for state post conviction relief on August 16, 2004, well before the expiration of 90 days and prior to the point at which the one-year statute of limitations commences.

The Louisiana Supreme Court denied writs on Petitioner's post-conviction relief on August 19, 2005, after which a total of 220 days passed before Petitioner filed his federal habeas petition on March 27, 2006.  Thus, a total of 222 days lapsed, which is within the statutory time limit.

**C.     VENUE**

Under 28 U.S.C. § 2254(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained. Petitioner is incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana, which is in Iberville Parish, a parish that falls within the Middle District of Louisiana under 28 U.S.C. § 98(b).  However, Petitioner was convicted and sentenced in St. John the Baptist Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana.  Therefore, venue lies for this petition.

**D.     EXHAUSTION**

Petitioner's claims appear to be exhausted, although the State expressed some doubt about whether his petitioner for post-conviction relief had been properly addressed by the Louisiana Fifth Circuit Court of Appeal.  Generally, exhaustion of adequate state

remedies is a condition precedent to the invocation of federal judicial relief under 28

U.S.C. § 2254.  *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973).  The entirety of the

factual allegations and legal theories presented to the federal court must have been

presented in a procedurally proper manner to the highest state court, here the Louisiana

Supreme Court.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding that a claim

presented to the state courts must be more than "somewhat similar to the claim presented

to a federal court") (*citing Picard v. Connor*, 404 U.S. 270 (1971)); *Yohey v. Collins*, 985

F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982).  The issue could

have been presented to the highest state court on direct appeal or in a state post-

conviction proceeding; either is sufficient and both is not required.  *See Brown v. Allen*,

344 U.S. 443, 447 (1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990).  The

requirement of exhaustion is now codified by 28 U.S.C. § 2254(b)(1), which provides,

*inter alia*, that habeas relief "shall not be granted unless it appears that . . . the applicant

has exhausted the remedies available in the courts of the State."  The other provisions

providing exceptions to this general rule are inapplicable here.  Finally, in the case where

a petition presents both unexhausted and exhausted claims, a so-called "mixed petition,"

the entire petition should be dismissed without prejudice unless the petitioner abandons

the unexhausted claims.  *See Rose*, 455 U.S. at 509.

Petitioner's first three claims for relief – the improperly sustained reverse-

*Batson* claims, the denial of a competency hearing, and the imposition of an excessive

sentence—were presented to both the Louisiana Fifth Circuit Court of Appeal and

the Louisiana Supreme Court on direct appeal.  (Rec., pgs. 8-13).  The facts alleged for

each claim are the same as those presented to state courts as are the legal theories

articulated by Petitioner.[2]  Petitioner's first three claims are, therefore, factually and

legally exhausted.

Finally, Petitioner's last claim, forwarding various allegations of ineffective

assistance of trial counsel, was presented to and summarily denied by the state court,

the Louisiana Fifth Circuit Court of Appeal, and the Louisiana Supreme Court in a

motion for post-conviction relief on August 23, 2004, September 21, 2004, and August

19, 2005 respectively.

## E.      STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d)(1) and (2), revised standards of review for questions of

fact, questions of law, and mixed questions of law and fact and provided.  If a state court

has adjudicated the claim on the merits, pure questions of law and mixed questions of law

and fact are reviewed under 28 U.S.C. § 2254(d)(1).  *Hill v. Johnson*, 210 F.3d 481, 485

(5th Cir. 2000).  Questions of fact are reviewed under 28 U.S.C. § 2254(d)(2).  Id.

Regarding questions of law and mixed questions of law and fact, a federal court

must defer to the stat court's decision unless it was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by Supreme

---

[2] In addition to arguing that the sentence was unconstitutionally excessive, Petitioner also raised the argument that the trial court failed to adhere to the sentencing guidelines because it did not engage in sufficient pre-sentencing review, which then resulted in the imposition of a constitutionally excessive sentence. (Pet., p. 25).  Insofar as this argument involves a review of the application of state law and was specifically addressed in the Louisiana Fifth Circuit Court of Appeal's decision, in which the Court found that he did not comply with the procedural requirements for appealing any non-compliance with sentencing guidelines, this Court is precluded from considering the merits of this argument. *See Coleman v. Thompson*, 501 U.S. 722 (1991)(finding that federal habeas review of a claim is barred if the claim has received "an independent and adequate state procedural rule" unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice); *see also Harris v. Reed*, 489 U.S. 255, 263 (1989); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).

Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court

has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have
> independent meaning. A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule different from the governing
> law set forth in our cases, or if it decides a case differently than we have done on
> a set of materially indistinguishable facts. The court may grant relief under the
> "unreasonable application" clause if the state court correctly identifies the
> governing legal principle from our decisions but unreasonably applies it to the
> facts of the particular case. The focus of the latter inquiry is on whether the state
> court's application of clearly established federal law is objectively unreasonable,
> and . . . an unreasonable application is different from an incorrect one."

*Bell v. Cone*, 535 U.S. 685, 694 (2002) (*citations omitted*).

As to questions of fact, factual findings are presumed to be correct and a federal

court will give deference to the state court's decision unless it "was based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C.

§ 2254(e)(1).

## F.     ASSIGNMENTS OF ERROR

### 1.     Reverse-*Batson* Claim

Petitioner asserts that the trial court impermissibly sustained the prosecution's

*Batson* challenges to two venire members, Mr. Jeandron and Mrs. Snyder, both of whom

ended up serving as jurors. After carefully reviewing the record, the Louisiana Fifth

Circuit Court of Appeal found that the trial court acted within its discretion in refusing to

accept defense counsel's proffered reasons for challenging Mrs. Snyder and Mr.

Jeandron. This Court agrees.

The Fifth Amendment prevents criminal defendants from using peremptory strikes on the basis of race. *Georgia v. McCollum*, 505 U.S. 42 (1992); *United States v. Bentley-Smith*, 2 F.3d 1368, 1372 (5th Cir. 1993). Determining whether a party has made a peremptory challenge on the basis of race involves a three-step process: first, the complaining party must make a *prima facie* showing that opposing counsel exercised a peremptory challenge on the basis of race; then, upon making such a showing, the burden shifts to the striking party to articulate a race-neutral explanation; finally, the trial court must determine whether the complainant has carried his or her burden of proving purposeful discrimination. *Polk v. Dixie Ins. Co.*, 972 F.2d 83 (5th Cir. 1992); *Bentley-Smith*, 2 F.3d at 1373.

Because findings in this context largely turn on an evaluation of the credibility or demeanor of the attorney who exercises the challenge, the trial court's determination is entitled to a large degree of deference. *Batson v. Kentucky*, 476 U.S. 79, 98 n.21 (1986); *Moody v. Quarterman*, 476 F.3d 260 (5th Cir. 2007). In general, a trial court's determination that a party has used peremptory strikes in a discriminatory manner is a finding of fact and will not be overturned by this Court absent clear error. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 1871 (1991); *United States v. Duncan*, 191 F.3d 569, 574 (1999); *see also Bentley-Smith*, 2 F.3d at 1372. However, if the trial court's finding of fact is based on an improper legal standard, then the finding no longer receives the "insulation of clearly erroneous review." *Bentley-Smith*, 2 F.3d at 1373 (*citations omitted*).

During voir dire, defense counsel used nine peremptory challenges against white jurors and did not attempt to strike, either on the basis of a peremptory or for-cause

challenge, any black jurors. (Rec., pgs. 222-23). Among the venire members defense

counsel struck were Mr. Jeandron and Mrs. Snyder.  Mr Jeandron had indicated that he

lived in LaPlace, was married, employed part-time with Allied Maintenance Training,

and had five children ranging in age from 15 to 49.  At one point during voir dire, Mr.

Jeandron stated that he did not think all policemen always tell the truth and that he would

be able to vote not guilty.  For her part, Mrs. Snyder said that she lived in LaPlace, was

married, and had children ranging in age from 35 to 41.  She also stated that she was

retired from Marathon Oil, that her husband was retired from St. John Parish water works

department, and that she would be able to vote not guilty.

 After the prosecutor pointed out that defense counsel had used nine peremptory

challenges against white venire members only and challenged defense counsel's reasons

for doing so, the trial court asked defense counsel to articulate race-neutral reasons for his

peremptory challenges.[3]  Defense counsel articulated a variety of reasons, including

insufficient eye-contact, general demeanor, etc., some of which the trial court accepted as

valid based on its reading of the situation.[4]  In setting forth the basis of his peremptory

challenge to Mr. Jeandron, defense counsel stated that he "didn't feel comfortable with

[Mr. Jeandron's] lack of eye contact" or "the way [Mr. Jeandron] responded and the

manner that he responded to questions." (Rec., p. 222).  Defense counsel's reason for

challenging Mrs. Snyder was that he "felt uncomfortable with the fact that a female might

---

[3] Specifically, the court indicated that defense counsel "need[ed] to make a response to these nine challenges" after the State pointed out that Mr. Jeandron was "the ninth white juror that has been peremptorily challenged" in violation of *Batson* and after further noting that defense counsel had only challenged white jurors and not any African Americans. (Rec., pgs. 222-23).
[4] The trial judge accepted defense counsel's challenge to Gary Beauchamp because he was an Assistant Attorney General for the Louisiana Department of Justice and engaged in prosecutorial work.  Defense counsel also objected to James Kliebert, because of a possible connection between Mr. Kliebert and Detective Hidalgo through the Krewe of DuMonde, and to Marlene Meades on the basis of a lack of eye contact; the trial court found defense counsel's reasons sufficient to withstand a *Batson* challenge in both cases.

be prejudiced against a young male defendant." (Rec., p. 224). Defense counsel likewise indicated that he felt uncomfortable with her as juror because she had children, while the defendant was single and did not have children. The prosecution responded by arguing that Mr. Jeandron had answered the questions "quite frankly" and stated that based on defense counsel's proffered reasons for rejecting Mrs. Snyder, the court "should probably exclude ninety percent of this jury and not have jury trials in St. John Parish." (Rec., p. 222). The trial court did not accept defense counsel's proffered reasons for challenging Mr. Jeandron and Mrs. Snyder, stating that "the Jeandron thing, I don't think that was proper – I have a hint that the Snyder and Jeandron [sic] are racially motivated." (Rec., p. 226). Both Mrs. Snyder and Mr. Jeandron ended up on the jury over defense counsel's objection.

On appeal and in his habeas petition, Petitioner asserts that the trial court did not make an explicit finding of a pattern of racial discrimination in defense counsel's use of peremptory challenges because the court only found "a hint" that the peremptory challenges of Mr. Jeandron and Mrs. Snyder were racially motivated. In addition, Petitioner argues that the reasons defense counsel provided for challenging Mr. Jeandron and Mrs. Snyder were viable, race-neutral reasons for exercising peremptory challenges which the trial court should have sustained. (Pet., pgs. 8-10). These arguments are not persuasive.

The trial court adhered to the three-step process in analyzing the prosecution's reverse-*Batson* claim and sufficiently indicated its doubts surrounding the propriety of defense counsel's use of peremptory challenges. First, the prosecution raised a *Batson* claim in response to the fact that defense counsel had used nine peremptory challenges

12

against white persons only and had not directly challenged any African-American jurors either for-cause or on a peremptory basis.  Utilization of all or nearly all peremptory challenges against jurors of one race has previously been found sufficient to establish a *prima facie* case of racial bias.  *See United States v. Jynes*, 197 Fed. Appx. 351 (5th Cir. 2006) (finding that defendant had established a *prima facie* case by showing that he was African-American, a cognizable racial group, and that prosecutors used all six of their peremptory challenges to remove African-Americans from jury pool); *see also Duncan*, 191 F.3d 569 (finding nine out of eleven peremptory challenges directed towards members of one racial group sufficient to establish *prima facie* case).  Although the court did not explicitly state that it found this sufficient to establish a *prima facie* case, it may be inferred that the trial court so believed as the court told defense counsel that it "need[ed] to make a response to these nine challenges" in accordance with the second step in a *Batson* evaluation. (Rec., pgs. 222-23).

After listening to defense counsel's reasons and the prosecution's responses, the trial court then acted in accordance with the final step by determining whether the prosecution had sufficiently established purposeful discrimination.  The inquiry at this stage often turns on "whether a proffered race-neutral explanation should be believed." *Bentley-Smith*, 2 F.3d at 1373  (*citing United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir. 1991).[5]

Petitioner claims that the reasons given by defense counsel were facially neutral and valid.  Petitioner further points out that the trial court even accepted the lack of eye contact as a sufficient reason in regards to Marlene Meades since the trial judge also

---

[5] As has previously been noted, it is often difficult for a party to offer a solid argument for rejecting or accepting a proffered reason beyond referring to its believability. *See Bentley-Smith*, 2 F.3d at 1374.

noticed the lack of eye contact. (Pet., p.11).  As the Louisiana Fifth Circuit Court of
Appeal's decision acknowledged, the lack of eye contact or intuition may be valid bases
for making peremptory challenges. *State v. Stewart*, 03-KA-920, 8 (La. App. 5th Cir.
2004); *see also Bentley-Smith*, 2 F.3d at 1374 (collecting cases indicating that eye contact
and intuition may from acceptable race-neutral reasons for challenging a venire member).
However, the Louisiana Fifth Circuit Court of Appeal was also correct in its assertion
that the trial court has discretion to accept or reject a proffered reason based on its
assessment of the attorney's credibility.  In other words, the trial court can reject a
proffered reason if it believes that the reason is pre-textual and that the attorney's
challenge is actually racially motivated. *Bentley-Smith*, 2 F.3d at 1375-76.  Finally, a trial
court may base its conclusions upon "such things as the demeanor of counsel, the
reasonableness of the justifications given, and even the court's personal observation of
the venireman." *Bentley-Smith*, 2 F.3d at 1375.

        In this case, the record indicates and the Louisiana Fifth Circuit Court of Appeal
so found that the trial court listened to both sides and simply did not believe defense
counsel's proffered reasons for challenging Mr. Jeandron and Mrs. Snyder.  Instead, the
trial court apparently believed that counsel's challenges were actually racially motivated
based on the trial court's evaluation of defense counsel's reasoning and its observation of
the venire members.[6]  The Louisiana Fifth Circuit Court of Appeal was correct in finding
that the trial judge was acting in accordance with the requirements of *Batson* and,
therefore, properly rejected Petitioner's reverse-*Batson* arguments.

---

[6] The fact the trial judge accepted the lack of eye contact as sufficient against Ms. Meades indicates that the
judge was evaluating the validity of counsel's arguments based, in part, on direct observation of the venire
members.

2.    **Denial of Sanity Commission**

In his second assignment of error, Petitioner asserts that the trial court impermissibly denied a motion by defense counsel requesting that the court appoint a sanity commission to determine the competency of the Petitioner before proceeding to trial. (Rec., p. 47).  On appeal, the Louisiana Fifth Circuit Court of Appeal, once again noting the deference due a trial court's competency and sanity determinations, found that the trial judge did not abuse his discretion by rejecting defense counsel's motion under the circumstances of this case.  Having reviewed the record, this Court finds no error of clearly established federal law in the state court's denial of a sanity commission.

It is a violation of due process to try and convict a defendant who lacks mental competence.  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Carter v. Johnson*, 131 F.3d 452, 459 (5th Cir. 1997).  The constitutional standard for competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam).

In order to protect the substantive right, a state must provide a defendant with procedures to ensure that an accused is not tried or convicted while incompetent.  *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983) (*citing Pate*, 383 U.S. at 385).  Specifically, a trial court must conduct an inquiry into an accused's competence if the evidence raises a bona fide doubt as to competency.  *Carter*, 131 F.3d at 459 n.10 (*citing Pate*, 383 U.S. 375); La. C.Cr.P Art. 643.  Different standards govern violations of the substantive and procedural competence requirements.  *Carter*, 131 F.3d at 459; *Lokos v. Capps*, 625 F.2d

1258, 1261 (5th Cir. 1980).  If a petitioner seeks federal habeas corpus relief on the substantive claim, i.e., he was tried while incompetent in violation of his due process rights, the defendant must present facts sufficient to "positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial." *Carter,* 131 F.3d at 460 (*citing United States v. Williams*, 819 F.2d 605, 609 (5th Cir. 1983)).  The threshold burden is "extremely heavy." *Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir. 1983).[7]

A petitioner seeking federal habeas relief on the grounds that his procedural rights were violated must be able to point to evidence presented to the trial court that raises a bona fide doubt about competency at the time of trial.  *Holmes*, 709 F.2d at 967.  The test in such a case is an objective one based on what was known to the trial court at the time of trial.  *Carter*, 131 F.3d at 459, n10 (indicating that "[i]f the trial court receives evidence, viewed objectively, that should raise a reasonable doubt as to competency, yet fails to make further inquiry, this constitutes a denial of a fair trial"); *see also Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980).  The requirement that the trial court investigate competency further is not without limits, even after sufficient evidence to establish a bona fide doubt about competency has been presented.  The fact-finding

---

[7] Inasmuch as Petitioner does not appear to be claiming a substantive violation, this Court need not address the issue.  However, out of an abundance of caution, the Court notes that Petitioner has failed to present sufficient evidence to "positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial." *Carter,* 131 F.3d at 460 (*citing United States v. Williams*, 819 F.2d 605, 609 (5th Cir. 1983)).  No medical records from the hospital or the prison are contained in the record.  Even assuming Petitioner's allegations in this regard are true, however, the fact a petitioner is receiving treatment for mental health issues does not establish that the mental health problems are sufficiently severe so as to make it likely that the Petitioner may be incompetent. *United States v. Teague*, 956 F.2d 1427, 1431-32 (7th Cir. 1992) (indicating that fairly severe mental health problems may need to be shown).  Moreover, the subsequent suicide attempts do not establish his incompetency at the time of trial as they occurred only after Petitioner had been convicted and sentenced.  Finally, the exchange between the trial judge and Petitioner contained in the record is insufficient to raise substantial doubt about Petitioner's competency and, in fact, indicates that Petitioner had at least a minimal amount of understanding about the proceedings.

process must rest on procedures and evidence "sufficient to permit a trier of fact reasonably to assess an accused's competency against prevailing medical and legal standards." *Holmes*, 709 F.2d at 967 (*citing Fulford v. Maggio*, 692 F.2d 354, 361 (5th Cir. 1982, *rev'd on other grounds*, 462 U.S. 111 (1983)).  The adequacy of the procedures varies according to the "fact matrix," but the Fifth Circuit has "never suggested that a state court must conduct a full-blown competency hearing every time there is the slimmest evidence of incompetency." *Id*. (*citing Curry v. Estelle*, 531 F.2d 766, 768 (5th Cir. 1976); *United States v. Horovitz*, 584 F.2d 682, 683 n. 3 (5th Cir. 1978)).

Moreover, a trial court generally has discretion in deciding whether to hold a competency hearing. *United States v. Morgan*, 559 F.2d 397 (1977); *State v. Fish*, 99-1280 (La. App. 5th Cir. 4/12/00), 759 So.2d 937.  When there is no reasonable cause to believe that the defendant may be incompetent, or when the motion for a mental examination is made frivolously or not in good faith, the court does not abuse its discretion in denying the motion. *See, e.g*., *United States v. McEachern* 465 F.2d 833, 838 (5th Cir. 1972), *cert. denied*, 409 U.S. 1043 (1972); *United States v. Williams*, 998 F.2d 258 (5th Cir. 1993) (finding trial court was acting within its discretion in denying competency motion where the defendant supplied "only the bare allegation that he ha[d] a 'history of mental problems' and has been 'under medical and psychiatric care as well as medication'" where sufficient evidence established that he was able to assist in his defense and understand the proceedings against him); *see also United States v. Teague*, 956 F.2d 1427, 1431-32 (7th Cir. 1992) (upholding district court's failure to hold a competency hearing where defendant presented evidence that he was undergoing

treatment for drug dependency and had been diagnosed four months previously with major depression, generalized anxiety, and borderline personality disorder because the district court was given no reason to believe that the defendant might be incompetent to stand trial as he was able to respond clearly and properly to the court's questions); *State v. Wilkerson*, 403 So.2d 652, 658 (La. 1981).

A state habeas court's competency determination is a question of fact entitled to a presumption of correctness. *Thompson v. Keohane*, 516 U.S. 99, 111 (1995) (noting competency to stand trial is a "factual issue," the resolution of which is entitled "presumptive weight"); *Carter*, 131 F.3d at 464 (holding that the state habeas court's decision regarding competency was entitled to a presumption of correctness). Additionally, a petitioner seeking a *nunc pro tunc* evidentiary hearing for the purpose of proving that he was incompetent at the time of trial must "make a showing by clear and convincing evidence to raise a threshold doubt about his competency." *Lokos*, 625 F.2d at 1261.

In the instant case, defense counsel filed a Motion to Determine Sanity with the trial court on April 30, 2001. (Rec., p. 47).  Defense counsel's motion indicated that it had just come to the attention of counsel that Petitioner had a documented history of paranoid schizophrenia and had been diagnosed and treated for schizophrenia at Charity Hospital in New Orleans.  Counsel further stated that Petitioner had been prescribed various drugs since his arrest and that counsel had a difficult time communicating with Petitioner. (Rec., p.47).

After defense counsel filed the motion, the trial judge spoke briefly with Petitioner to ascertain whether the defendant understood that his trial was set for that

day. (Rec., p.114).  Petitioner indicated that he was under the impression that he was there to speak to the judge, which the trial judge indicated was not unusual for a defendant to think. (Rec., pgs.114-15).  The trial judge then inquired into whether Petitioner had spoken with his attorney that day.  At first, Petitioner stated that he had not.  However, after the trial judge indicated that he believed that was "a complete fabrication" and that Petitioner was only pretending to misunderstand the judge's questions, Petitioner responded that he had spoken with his attorney but wanted to speak to the judge. The trial judge then stated that it was not his policy to speak with defendants on the day of trial and that the court was going to proceed with a felony trial, at which point the prospective jurors entered the courtroom and were sworn in. (Rec., pgs.115-16).

The trial judge issued a written judgment denying defense counsel's motion to appoint a sanity commission.  The trial court's decision denied Petitioner's motion based on the fact it was filed right before voir dire was to begin and without any evidence supporting the assertions that defendant had a history of mental illness beyond Petitioner's self-serving statements. (Rec., p. 55).  In addition, the trial court denied defense counsel's motion after briefly conversing with Petitioner and ostensibly satisfying itself as to Petitioner's competence.

Upon review, the Louisiana Fifth Circuit Court of Appeal found that the trial court's opinion was entitled to a substantial amount of discretion and that the record did not indicate that the trial court had abused its discretion in denying defense counsel's motion.  Rather, the Louisiana Fifth Circuit Court of Appeal stated that Petitioner had "conversed intelligently with the trial court and counsel at various stages of the proceedings." *State v. Stewart*, 03-KA-920, 13 (La. App. 5th Cir. 2004).  Moreover,

the Louisiana Fifth Circuit Court of Appeal found that the failure to include evidence in support of defense counsel's motion and the fact it was filed so soon before proceedings began sufficiently supported the trial court's inference that the filing of the motion was intended to delay the trial and that a sanity determination was unnecessary, such that it could not say that the trial court had abused its discretion in denying the motion.

Petitioner contends that the cases cited by the trial court and the Louisiana Fifth Circuit Court of Appeal in support of each ruling were inapplicable because the motion in this case was not made as a ruse to delay the trial as it was made the day before the trial and not "moments before trial." (Pet., p. 14-15).  Petitioner further argues that the verbal exchange that occurred between him and the Court demonstrates the validity of defense counsel's motion and that both court's erred in failing to accord defense counsel's assertions regarding Petitioner's ability to understand sufficient weight.

A trial court has discretion in determining whether a hearing to determine competency is necessary.  Furthermore, the circumstances surrounding Petitioner's motion, including its last-minute nature and general lack of support, are valid reasons a trial judge may conclude that a petitioner's motion is a ruse. *See Williams*, 998 F.2d 258. As to whether the conversation between the trial judge and Petitioner raised a bona fide doubt about Petitioner's competency at the time of trial, this Court cannot say that it did. Instead, the exchange appears to support the trial court's finding and the Louisiana Fifth Circuit Court of Appeal's interpretation that Petitioner was able to sufficiently communicate with the trial court.  Finally, in regards to defense counsel's averments of Petitioner's incompetency, while always a consideration in determining the need for a competency hearing, an attorney's opinion is by no means decisive.  Nor must an

20

attorney's evaluation of a defendant's competence inherently be given substantial weight. As other court's have noted, "the testimony of trial counsel cannot be treated as coming from a totally disinterested witness." *Bouchillon v. Collins*, 908 F.2d 589, 593 n.9 (5th Cir. 1990) (*citing Bolius v. Wainwright*, 597 F.2d 986, 989 (5th Cir. 1979)).

It is evident from the record that trial court believed Petitioner did not need a competency hearing and suspected that Petitioner's motion was a ruse or a delay tactic. In light of this Court's limited standard of review, the discretion accorded a trial court's determination as to the necessity of a competency hearing based on their ability to directly observe the defendant, and the limited information before the trial court and the Fifth Circuit Court of Appeal supporting Petitioner's assertions, this Court cannot say that it was violation of clearly established federal law for the state courts' to deny Petitioner's motion for a sanity commission to determine competency. Nor can this Court say that Petitioner has sufficiently established by clear and convincing evidence a bona fide doubt about his competency at the time of trial which would entitle Petitioner to a *nunc pro tunc* evidentiary hearing.

### 3.   **Excessive Sentence**

Petitioner's third assignment of error is that the trial court imposed an excessive sentence in violation of the Eighth Amendment of the Constitution of the United States and Article I, § 20 of the Louisiana Constitution. Specifically, Petitioner asserts that in light of the "severity of the offense, the nature of the defendant, and other sentences imposed onto [sic] other offenders under similar or even worse circumstances," the 47-year sentence imposed was "grossly disproportionate to the severity of the offense." (Pet., p. 24).

On appeal, the Louisiana Fifth Circuit Court of Appeal found that Petitioner's sentence was within the statutory time-limit and was not constitutionally excessive because the sentencing court has substantial discretion in sentencing and sufficiently considered factors which would justify the imposition of such a sentence. This Court is constrained to agree that Petitioner's sentence is not constitutionally excessive.

The Eighth Amendment protects against not only barbaric punishments, but also against punishments that may be characterized as grossly disproportionate to the crime committed. *Ewing v. California*, 538 U.S. 11, 20-24 (2003); *Solem v. Helm*, 463 U.S. 277 (1983). If a state sentence is within the statutory limits, however, it is entitled to a presumption of constitutionality and will not be upset unless the sentence is so disproportionate to the offense as to be completely arbitrary and shocking. *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *Nicks v. Cain*, 2005 WL 1578024, 8 (E.D. La. 2005). The "burden is on the defendant to rebut the presumption of constitutionality by showing that he is exceptional." *Nicks*, 2005 WL at 8.

When a criminal defendant avers that the sentence imposed was disproportionate, this Court utilizes the three part test set out in *McGruder v. Puckett.* 954 F.2d 313, 316 (5th Cir. 1992). Pursuant to this test, the court first weighs the gravity of the offense against the severity of the sentence. *Id*. at 316. If the court finds that the sentence is "grossly disproportionate" in relation to the offense, the court should then compare the sentence received to "(1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *McGruder*, 954 F.2d at 316. If the court concludes that the sentence is not "grossly disproportionate," however, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928, 942-43 (5th Cir. 1997). Thus, the

key is to determine whether a petitioner's punishment meets the threshold of gross disproportionality.  As the Supreme Court has previously noted, outside the context of capitol punishment, successful proportionality challenges are "exceedingly rare" and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing*, 538 U.S. at 21; *Lockyer v. Andrade*, 538 U.S. 63, 73, 77 (2003).

In this case, Petitioner's sentence was within the statutory time limit and is, therefore, presumptively constitutional.  The statutory penalty for conviction for distribution of cocaine under LSA-R.S. 40:967(A) is a range of five to 30 years.  As a second felony offender, Petitioner's sentencing range was enhanced to 15 to 60 years. LSA-R.S. 40:967(B)(4)(b); and LSA-R.S. 15:529.1(A)(1)(a).  Petitioner received a sentence of 47 years based on the trial court's assessment of "various mitigating and aggravating circumstances that were evident in the trial" and in light of the fact that the distribution conviction was "a second offense in the same family, essentially an escalation of the offense being that the first one … was possession of a drug and now he's graduated to distribution in this offense [sic]."

Petitioner claims exception to the presumption because of some mental health problems he has requiring him to spend time in the mental health ward, the sheer length of time received in comparison to other defendants convicted of similar crimes, and because he has a young daughter. (Pet., pgs. 26-27). The sentencing court stated that it had "considered all that has come into play … and… the various mitigating and aggravating circumstances that were evident in the trial."  These factors do not make his sentence grossly disproportionate.

In addition to falling within the statutory time limits, this Court finds that when weighing the gravity of the crime involved against the severity of the sentence, Petitioner's sentence is not grossly disproportionate and thus, not constitutionally excessive.  Looking at the gravity of the crime involved, this Court must look at Petitioner's most recent offense in light of his prior offenses, as Petitioner was sentenced under a habitual offender statute. *Id*. (*quoting Wilson v. State*, 395 So.2d 957, 958 (Miss. 1981)) (indicating that the habitual offender statute reflects "the seriousness of his most recent offense, not as it stands alone, but in light of his prior offenses").  In the instant case, as was noted by both the sentencing court and the Louisiana Fifth Circuit Court of Appeal, Petitioner had a prior felony conviction for possession of cocaine.  His conviction for distribution of cocaine was, therefore, viewed and so treated by both state courts as "an escalation of the defendant's behavior." *State v. Stewart*, 03-KA-920, 17 (La. App. 5th Cir. 1/27/04).  In addition, although not specifically noted in the trial court's decision, Petitioner apparently had a criminal record going back to 1984 and his conviction for possession was the result of a plea bargain in which a distribution and weapons charge was dropped.  Louisiana state courts have previously found plea bargains may be considered as a factor in determining whether a sentence is excessive. *State v. Smith*, 524 So.2d 837 (La.App. 3rd Cir. 1988).  Finally, the nature of drug distribution is sufficiently serious as to constitute a grave offense.  *Terrebonne v. Blackburn*, 646 F.2d 997, 1002 (5th Cir. 1981).

This Court finds that the severity of the 47-year sentence is not "grossly disproportionate."  In *Rummel v. Estelle*, frequently used as the benchmark for distinguishing constitutional sentences and grossly disproportionate punishments, the

Supreme Court upheld a life sentence under a recidivist statute for a petitioner who had fraudulently used a credit card, forged a check, and obtained $120.75 under false pretenses. 445 U.S. 263 (1980); *see also Gonzales*, 121 F.3d at 943.  Likewise, in *Hutto v. Davis*, the Supreme Court upheld a sentence in which the defendant received two consecutive terms of 20 years in prison for possession with intent to distribute nine ounces of marijuana and distribution of marijuana.  454 U.S. 370 (1982).   When viewed in comparison to *Rummel*, Petitioner's sentence is not grossly disproportionate.  Having found that the sentence was not grossly disproportionate, further inquiry into the proportionality of his sentence is unnecessary. *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997).

### 4.    <u>Ineffective Assistance of Counsel</u>

Petitioner's final claim for relief is that he received ineffective assistance of trial counsel.  Specifically, Petitioner asserts that his trial counsel was ineffective for the following reasons: (1) Counsel failed to timely conduct any pretrial investigation of the insanity/competency defense to support the "motion for continuance" and "motion for competency hearing," and to withdraw plea and enter a plea of not guilty by reason of insanity, or present insanity defense at trial; (2) Counsel opened the door to other crimes evidence even after being cautioned by the prosecutor that the prosecutor would pursue the inquiry further; (3) Counsel failed to object or move for mistrial based on the prosecutor's use of other crimes evidence; (4) Counsel failed to object or move for a mistrial regarding the prosecutor's statement of defendant's silence and failure to take the stand and testify.

A criminal defendant has a right to counsel under the Sixth Amendment which entails the right to effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 684-86, (1984).  To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Id.*, at 687.  Petitioner bears the burden of proof when asserting a claim for ineffective assistance of counsel and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1996); *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

A finding of deficient performance requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Leal*, 428 F.3d at 548 (*quoting Strickland*, 466 U.S. at 687)(*internal quotations omitted*).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986).  Analysis of the reasonableness of counsel's actions must be in light of all the circumstances "viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 689-90; *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993).

In order to prove prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland*, 466 U.S. at 694.  In other words, counsel's performance is prejudicial "only if, but for counsel's errors, there is a reasonable probability that the final result would have been different and confidence in the reliability of the verdict has been undermined." *Leal*, 428 F.3d at 548 (*citing Little v. Johnson*, 162 F.3d 855, 860-61) (5th Cir. 1998).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002), *cert. denied*, 538 U.S. 969, 123 S.Ct. 1768 (2003).  This Court must, therefore, defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### Insufficient Investigation of Defendant's Mental Health

Although Petitioner avers that he informed defense counsel of previous mental problems well in advance of trial, counsel's motion to determine sanity indicates that counsel learned of Petitioner's mental history the day that it was filed. (Rec., p.47). There is no further evidence contained in the record which would indicate when defense counsel first learned of or had reason to know about Petitioner's mental health issues, what actions defense counsel undertook to investigate Petitioner's mental health, or what reasons, if any, defense counsel had for failing to investigate Petitioner's mental health. In the absence of such evidence, it is difficult or impossible to say whether defense

counsel acted reasonably in filing a hand-written motion to determine competency the day before trial and in failing to obtain medical records supporting such a motion.[8]

This Court need not determine the reasonableness of defense counsel's actions in this case, however, as Petitioner's arguments do not establish that defense counsel's hand-written motion prejudiced Petitioner's case. *Walker v. Gibson*, 228 F.3d 1217 (10th Cir. 2000), *overruled on other grounds by Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). In order to demonstrate prejudice from defense counsel's failure, Petitioner would have to raise sufficient doubt about his competence at the time of trial. *Id*. Without establishing incompetency at the time of trial, "it necessarily follows that [Petitioner's] trial counsel w[as] not constitutionally ineffective." *See Carter*, 131 F.3d 464.

### Other Crimes Evidence

Petitioner asserts that his trial counsel was ineffective for opening the door to evidence of other crimes and for failing to move for a mistrial after allowing the introduction of inadmissible evidence of other crimes. Specifically, Petitioner points to the introduction of a report indicating that Petitioner had been in possession of marijuana on at least one other occasion. Defense counsel referred to the report even after the prosecutor indicated that he would pursue the issue if defense counsel opened the door.[9]

---

[8] If defense counsel had, in fact, been informed previously about Petitioner's history of mental problems or had reason to doubt the Petitioner's competency, the failure to investigate further and gather evidence supporting the hand-written motion for a competency hearing could constitute ineffective assistance of counsel. *See Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003) (noting that counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired). However, if defense counsel could not have previously learned of Petitioner's prior mental health history before filing the motion to determine competency or did not have reason to suspect Petitioner's competence, his failure to fully explore the issue might not constitute ineffective assistance of counsel. *See Miniel v. Cockrell*, 339 F.3d 331, 345 (5th Cir. 2003) (indicating that "counsel is not constitutionally ineffective for insufficiently investigating a defendant's mental or psychological condition when there is nothing to put counsel on notice that such a conditioner exists").

[9] Petitioner cites the following exchange as establishing defense counsel's error (Rec. p. 349): Calogero on Cross-Examination:

Defense counsel did not, however, directly state that the "green vegetable matter" was marijuana, and timely objected when the prosecutor subsequently referred to the report.

Without directly assessing whether counsel's performance was deficient in pursuing the line of questioning regarding the "green vegetable matter," Petitioner's arguments surrounding the use of "other crimes" evidence fail because they are insufficiently prejudicial.  Reviewing the transcript, it is unclear whether the existence of marijuana in the report was ever directly linked to the defendant as the conversation regarding the existence of marijuana in the report occurred after it was established that the investigation involved many transactions and many defendants.[10]  Moreover, the jury

---

Q: Okay.  I'm going to have you look at page two of the narrative report.
A [Detective Hidalgo]: Witness reviews the above described document.
Q: Now…
A: I don't know what this is
Prosecutor, Mr. Becnel: May I see it counsel? Common courtesy. (Defense Counsel hands to prosecutor).
Mr. Becnel: (Prosecutor reviews the document described above).  If counsel wants to question this Officer about this report, this is a different case number involving --- I'm not going to go any further, but if he wants to pursue this he's opening the door and I fully intend to walk right through it.  It's another case –
Mr. Becnel: It's another case.  Counsel, I'm cautioning you.  If you open that door, I'm going right through it.  It's a different case than this case today.
The Court: So noted.
Mr. Becnel: Go ahead. Be my guest.  I'm sure the jury would love to hear.
The Court.  Direct everything to the Court, Mr. Becnel.
Mr. Calogero: (Examination of Witness)
Q: I was pointing your attention to something said about green vegetable matter.
A: Yes sir.
[10] In Redirect, the following exchange occurred between Mr. Becnel and Detective Hidalgo:
Q: Detective Hidalgo, as you indicated, Agent Gilbeau's report was dictated on the video tape after the transaction; is that correct?
A: Yes, sir.
Q: And as far as – you got the dope hours after, that being cocaine, how many buys did Agent Gilbeau make that day from different individuals?
A: I don't know the total amount but I am aware that this case was number five.  That was the fifth transaction that occurred on this date in question.
Q: So the normal procedure is you don't stop the whole operation after every buy.  You just proceed to the next one; is that correct?
A: Correct. We start at one end of the parish and work from east to west or west to east until we run out of money or the investigation is concluded.
Q: That sheet that Counsel showed you referring to the green vegetable matter, --
Mr. Calogero: Your Honor, I'm going to object at this point.
The Court: He hasn't even finished the question, yet.

was informed that the reference to marijuana contained in the report was not related to the case before it.  Because of the lack of any clear connection to Petitioner or his case, and the fact it was referenced in only the most abstract terms, the "other crimes" evidence, if indeed it was that, was not sufficiently prejudicial to cast serious doubt on the correctness of the verdict.

Given the lack of prejudice and the fact defense counsel's objection to the prosecutor's reference to "marijuana" in a report on defendant's previous case was denied, defense counsel was not deficient for failing to move for a mistrial and it is unlikely that any such motion would have been granted in any event.

### Failure to Move for a Mistrial Based on Prosecutorial Misconduct

Petitioner asserts that his counsel was ineffective for failing to move for a mistrial or objecting when the prosecutor referred to the fact that the defendant did not take the stand.  Specifically, Petitioner points to a statement in which the prosecutor said "[w]ell, I don't think that's what was said on the tape. The tape speaks for itself, since the defendant did not take the stand." (Rec., p. 390).  In response to Petitioner's arguments, the State claims that, when read in context, the prosecutor's statement was an "off the cuff" comment directed towards defense counsel's failure to produce evidence rebutting the video tape and was primarily intended to invoke the principle that the evidence speaks for itself.

---

Q: The sheet that this attorney provided you concerning green vegetable matter, is that commonly referred to as marijuana?
A: Yes, sir.
Q: Does that particular sheet have anything to do with this case today in the distribution of cocaine charge against Charles Stewart?
A: No, sir, totally unrelated. (Rec. p. 352).

A defendant's Fifth Amendment right to remain silent is well established.  In order to protect the right to remain silent, a prosecutor in a criminal case cannot comment on the accused's silence at trial or ask the jury to draw adverse inferences from a defendant's silence.  *United States v. Robinson*, 485 U.S. 25, 32 (1988); *Griffin v. California*, 380 U.S. 609, 615 (1965).  Courts apply a two–tiered test to a petitioner's claim that the prosecutor improperly commented on defendant's failure to testify: first, the court must determine whether the comments at issue were constitutionally impermissible, and if so, the court must then consider whether they were harmless beyond a reasonable doubt. *United States v. Virgen-Moreno*, 265 F.3d 276 (5th Cir. 2001)

Prosecutorial statements are constitutionally improper or impermissible if "the prosecutor's manifest intent was to comment on the defendant's silence," or if "the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Virgen-Moreno*, 265 F.3d 276 (5th Cir. 2001) (*quoting United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996) (*internal quotation omitted*)). The prosecutor's intent is not manifest if there is an "equally plausible explanation for the remark." *Id*.  Similarly, the "naturally and necessarily construed" prong is not established if the jury merely possibly or probably viewed the challenged remark as a comment on the defendant's silence. *Id*.  Finally, "the comments complained of must be viewed within the context of the trial in which they are made." *United States v. Dula*, 989 F.2d 772, 776 (5th Cir. 1993).

If this Court determines that the prosecutor's remarks were improper, the Court must then determine if the improper remarks were harmless or sufficiently prejudicial as to warrant reversal. *Virgen-Moreno*, 265 F.3d at 290.  Reversal is not warranted unless

the improper comment "cast serious doubt on the correctness of the jury's verdict." *United States v. Iredia*, 866 F.2d 114, 117 (5th Cir. 1989). "In attempting to establish that a prosecutor's improper comments constitute reversible error, the criminal defendant bears a substantial burden." *Virgen-Moreno*, 265 F.3d at 290 (*citing United States v. Diaz-Carreon*, 915 F.2d 951, 956 (5th Cir. 1990)). When determining the effect of the prosecutors' impermissible comments, this Court considers three factors: "the magnitude of the prejudicial effect of the remark, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt." *United States v. Bermea*, 30 F.3d 1539, 1563 (5th Cir. 1994), *cert. denied*, 513 U.S. 1156 (1995); *United States v. Palmer*, 37 F.3d 1080, 1085 (5th Cir. 1994).

While the prosecutor's statements appear to have been in response to defense counsel's claim that the tape did not sufficiently prove the Petitioner's guilt and defense counsel's attempt to interpret some of the garbled language contained in the tape, the prosecutor's words directly refer to the fact the Petitioner did not take the stand, implying that the evidence defense counsel should have offered was Petitioner's testimony. In other words, even assuming the statement can reasonably be read as a comment on defense counsel's failure to offer rebuttal evidence, it does so only by drawing attention to the absence of evidence in the form of the defendant testifying. Thus, the prosecutor's statement would "naturally and necessarily" be construed as a statement on Petitioner's failure to take the stand and was, therefore, improper.[11] *U.S. v. Mellen*, 393 F.3d 175 (D.C. Cir. 2004).

---

[11] Petitioner's situation is, for instance, readily distinguishable from *Virgen-Moreno* or *Palmer*, in which the comments were directed toward the failure of defense counsel to have defense witnesses testify on defendant's behalf. *See Virgen-Moreno*, 265 F.3d at 292-93 (discussing similarities between itself and *Palmer*). Instead, Petitioner's situation appears to be more akin to the situation in *United States v. Bates*, in

Although the statement was improper, this Court finds that it was harmless error. Looking at the magnitude of the effect of the comment, it does not appear that the comment would have been likely to affect the outcome of the trial. The prosecutor referenced Petitioner's failure to testify about the contents of the tape only briefly and the statement occurred in the context of a discussion about which side had sufficiently explained what was actually happening/being said on the tape. Specifically, the prosecutor's statements appear to have been an attempt to point out the largely uncontested nature of the prosecution's interpretation of the events on tape in response to defense counsel's attempt to interpret what was said on tape.[12] (Rec., p.390). While defense counsel did not object and the record does not indicate that there was a cautionary instruction specifically based on the prosecutor's statement, the strength of the evidence against Petitioner, including the previously described videotape and the testimony of the officers conducting the operation, was particularly strong. Comparing Petitioner's situation to other cases with similar factual scenarios, this Court is satisfied that the prosecutor's statement, while improper, was harmless.[13]  Having

which the Fifth Circuit Court of Appeal held that the prosecutor's statement that "[y]ou didn't hear from the culprit" constituted plain error. 512 F.2d 56 (5th Cir. 1975); *but see United States v. Mellon*, 393 F.3d 175 (D.C. Cir. 2004) (ruling that the prosecution's comments at closing argument alluding to defendant's passive demeanor at trial and indicating that defendant had been "sitting there, very, very quietly all throughout the trial," though improper, did not highlight defendant's election not to testify, as would be grounds for reversible error; prosecutor was trying to illustrate defendant's awareness of his wife's illegal activities, and described defendant's physical appearance and not the choices he made in litigating case).

[12] *Compare United States v. Fabio*, 394 F.2d 132 (4th Cir. 1968) (prosecutor's closing comment upon certain "uncontradicted" evidence did not rise to the level of fundamental, plain error); *United States v. Becera-Soto*, 387 F.2d 792, *reh denied*, 393 U.S. 899, *cert. denied*, 391 U.S. 928 (indicating that prosecutor's reference in closing argument to the "unrebutted" nature of the prosecution's witnesses did not rise to the level of plain error).

[13] In *United States v. Barbour*, for instance, the First Circuit found that even if comments by the prosecutor during closing argument were improper references to defendant's failure to testify, they did not likely affect the outcome of the trial given the strong evidence against the defendant. 393 F.3d 82 (1st Cir. 2004);  *See also United States v. Quiroz*, 228 F.Supp.2d 1259 (D. Kan. 2002) (finding prosecutor's comments regarding the defendant's post-Miranda silence during trial, even if erroneous, were harmless because the evidence of defendant's guilt (more than 11 kilograms of cocaine found in hidden compartments in a van registered in his name) was substantial, the prosecutor's comments were made as a rebuttal to defense

found the statement harmless error, Petitioner's argument that the failure to object to these statements or move for a mistrial prejudiced the defendant's case as required by *Strickland* is without merit.

### III. CONCLUSION

Having considered the complaint, the record, and the applicable law, it is determined that petitioner has failed to demonstrate that his state conviction and sentence present grounds for the relief requested. Accordingly, **IT IS ORDERED** that the petition of CHARLES STEWART for writ of habeas corpus under 28 U.S.C. § 2254 is **DISMISSED WITH PREJUDICE**. Judgment will be entered accordingly.

New Orleans, Louisiana, this 28th day of June, 2007.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

counsel's closing argument, and defense counsel did not contemporaneously object to the comments made in closing rebuttal argument); *United States v. Mooney*, 315 F.3d 54 (1st Cir. 2002) (holding that the prosecutor's improper comment in closing regarding defendant's failure to testify was harmless beyond a reasonable doubt because the evidence against the defendant was overwhelming and jury instructions emphasized the presumption of defendant's innocence, the government's burden to prove guilt beyond a reasonable doubt, and the defendant's right not to testify); *United States v. Rahseparian*, 231 F.3d 1267 (10th Cir. 2000) (indicating that prosecutor's statements regarding defendants' decision not to testify were harmless beyond a reasonable doubt, notwithstanding that evidence on conspiracy charge at issue was entirely circumstantial, given comment's context, situated within lengthy but focused arguments regarding inferences to be drawn from evidence presented, evidence against defendants, and jury instructions about weight to be given closing arguments, government's burden of proof, and defendants' right to remain silent); *United States v. Palacios*, 612 F.2d 972 (5th Cir. 1980) (finding that it was not reversible error for the prosecutor to say that the state's evidence was "uncontroverted" in view of isolated nature of remark and the corrective instruction given by the court at defendant's request).